# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 2, 2010

139830 & (4)

In re:

HON. RICHARD B. HALLORAN, JR.
Judge, Third Circuit Court

_____/

SC: 139830
RFI Nos. 2008-17594
            2008-17657

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

By order of March 11, 2010, we remanded this matter to the Judicial Tenure Commission for further explication. The Commission responded by letter of May 3, 2010. This Court has reviewed the Commission's letter.

On order of the Court, the Judicial Tenure Commission has issued a decision and recommendation for discipline, and the Honorable Richard B. Halloran, Jr. has consented to the Commission's findings of fact, conclusions of law, and recommendation of a sanction, which was to be no less than a public censure and no greater than a public censure and a 14-day suspension without pay.

As we conduct our de novo review of this matter, we are mindful of the standards set forth in *In re Brown*, 461 Mich 1291, 1292-1293 (2000). We adopt the findings and conclusions of the Judicial Tenure Commission. Respondent was at all times a judge of the Third Circuit Court. He has admitted violating Canon 3A(5) of the Code of Judicial Conduct by failing to dispose promptly of the business of the court and by failing to exercise personal responsibility for his own behavior and for the proper conduct and administration of the court in which he presided, contrary to MCR 9.205(A). Respondent failed to timely adjudicate at least 30 family law cases within the guidelines of Michigan Supreme Court Administrative Order 2003-7. Those guidelines were implemented to ensure that judges timely process cases and require that judges submit caseflow statistics to the State Court Administrative Office. The guidelines provide that all family law cases are to be adjudicated within 364 days of filing. Respondent dismissed 30 cases as the guidelines threshold approached in order to avoid those cases being identified as being out of compliance with AO 2003-7. He would continue to work on the adjudication of those cases in a conscious design to avoid detection of those cases as being out of compliance.

As stated by the Judicial Tenure Commission:

The standards of judicial conduct make clear that an important component of justice is the prompt dispatch of judicial duties. Through his unjustified delay in resolving cases pending on his docket and his attempts to thwart detection of cases failing to meet the guidelines established by Administrative Order 2003-7, Respondent has failed in this responsibility. The facts asserted in the Formal Complaint, and established by the parties' stipulation in this matter, show by a preponderance of the evidence that Respondent breached the standards of judicial conduct and is responsible for (1) failing to dispose promptly of the business of the court, contrary to MCJC, Canon 3A(5), and (2) failing to exercise personal responsibility for his own behavior and for the proper conduct and administration of the court in which he presided, contrary to MCR 9.205(A).

The Judicial Tenure Commission recommended Respondent be publicly censured. Two members dissented from that portion of the recommendation, stating that a 14-day suspension was the appropriate sanction under the circumstances:

Respondent has admitted to a deliberate pattern of misconduct on the bench. Under these circumstances, we believe that consideration of the *Brown* factors requires a sanction more substantial than a mere public censure. . . .

Apart from the *Brown* factors, a matter of particular concern here is the element of dishonesty inherent in Respondent's actions. We agree with the Commission's finding that Respondent acted with a specific intent to conceal from the State Court Administrator's Office the fact that many of the matters pending in his courtroom were out of compliance with Michigan Supreme Court Administrative Order 2003-7. The dishonesty of Respondent's practice of entering unjustified no-progress dismissals is revealed by the fact that, in many of the cases, the parties simply continued to litigate as if nothing had changed. Continued litigation of dismissed cases became part of the culture of Respondent's courtroom. Thus, while the litigation continued apace, both the Third Circuit Court and the State Court Administrator's Office necessarily labored under a misapprehension regarding the state of Respondent's docket. Calculated dishonesty from a judicial officer, especially with regard to the administration of justice, merits a sanction more than a public censure. [Concurring/Dissenting Opin, 1-2.]

After reviewing the Recommendation of the Judicial Tenure Commission, the Concurring and Dissenting Opinions, the Settlement Agreement, the standards set forth in *Brown*, and the above findings and conclusions, we agree with the dissenting opinion and ORDER that the Honorable Richard B. Halloran, Jr., be publicly censured and suspended

for 14 days without pay, effective 21 days from the date of this order.  This order stands as our public censure.

MARKMAN, J. (*concurring in part and dissenting in part*).

I agree that, at a minimum, the discipline imposed by this Court's order is appropriate.  But I would remand to the Judicial Tenure Commission (JTC) for further explanation to determine if significantly greater discipline is appropriate.

By letter of May 3, 2010, the Chairperson of the JTC informed this Court that she could not provide the information requested in this Court's prior order because such information was outside of the scope of the stipulated facts provided to the JTC, citing *Dana Corp v Employment Security Com'n,* 371 Mich 107 (1963).  Although *Dana* held that stipulated facts are "sacrosanct" and cannot be "alter[ed]," it further held that a court can, of course, "reject any offered stipulation as incomplete . . . ." *Id.* at 110-111.  Here, the offered stipulation, in our judgment, *is* incomplete because it does not address the issues and questions raised in this statement.  Therefore, I would direct the JTC to hold an evidentiary hearing, and take any other action it deems necessary, to answer sufficiently and completely the questions raised in such statement.  That is, I would direct the JTC to indicate:  (1) the substance of the allegations contained in the request for investigation that was dismissed as part of the settlement agreement; (2) how that matter and the cases referred to in paragraphs 14a-14dd of the settlement agreement were brought to the attention of the JTC; (3) with respect to each case referred to in the settlement agreement, whether the parties or their attorneys were contemporaneously notified of the dismissal of the case; (4) if so, whether they complained or otherwise indicated objection; and (5) whether any dismissal or action by respondent subordinated the substantive legal merits of any case to respondent's determination to mislead the State Court Administrative Office.

I am also deeply troubled by the message that is being sent by the Court in this and in other recent cases of judicial misconduct.  In particular, I believe that the wrong message is being communicated as to this Court's resolve in severely sanctioning false judicial statements.  In *In re Servaas,* 484 Mich 634 (2009), decided last year, this Court, contrary to the recommendation of the JTC to remove the respondent judge from office for testifying falsely, imposed only a public censure.  In that case, there was overwhelming evidence that the judge had moved outside of the district from which he was elected in direct violation of the Michigan Constitution, and then engaged in a pattern and practice of actions to conceal this misconduct, including providing false testimony under oath.  Moreover, in the accompanying case of *In re Logan,* ___ Mich ___ (Docket No. 139546, order entered July 2, 2010), the Court again imposed only a public censure, despite the fact that the respondent judge appears to have testified falsely to the JTC — the stipulated facts indicate that he engaged in a telephone call with an

individual that lasted approximately 15 minutes, despite having repeatedly denied having any telephone conversations with that same individual on the date in question. As in this case, the Court was unwilling to remand to the JTC for further investigation concerning whether respondent testified falsely. Finally, in the instant case, the Court again imposes only a public censure and a 14-day suspension, despite respondent's admission that he dismissed 30 cases in order to avoid disclosure of the fact that he had failed to timely adjudicate those cases. In addition, the fact that, in many of these cases, the parties simply continued to litigate as if nothing happened, raises concerns about whether respondent had been forthright with the parties concerning such dismissals. Moreover, this is not the first time that respondent has been subject to discipline by the JTC. See *In re Halloran*, 466 Mich 1219 (2002).

As the leadership court within our state's judiciary, we communicate here either that we do not take false statements made in the course of a judge's exercise of duties seriously, or we believe that we lack the authority to require the JTC to address such matters. Either of these propositions is alarming, and very much inconsistent with the leadership traditionally exercised by this Court in preserving and maintaining a judiciary of the highest professional and ethical standards. Because I strongly disagree with each of these propositions, and because I believe this Court must exercise a more responsible stewardship of the judicial branch, I would direct the JTC to investigate the instant matter further.

CORRIGAN and YOUNG, JJ., join the statement of MARKMAN, J.

WEAVER, J., not participating. I abstain from voting on any items dealing with the Judicial Tenure Commission (JTC) and/or the Attorney Grievance Commission (AGC) to avoid any appearance that I could be trying to affect the outcome of the referrals of me to the JTC and AGC by Justices CORRIGAN, YOUNG and MARKMAN.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 2, 2010

_____
Clerk

0629