NURIEL v YOUNG WOMEN'S CHRISTIAN ASSOCIATION OF
METROPOLITAN DETROIT

Docket No. 110269. Submitted May 10, 1989, at Detroit. Decided
November 5, 1990, at 9:30 A.M. Leave to appeal sought.

Hedy Nuriel, director of Interim House, a shelter for abused
women which is sponsored by the Young Women's Christian
Association of Metropolitan Detroit, was discharged after a
story concerning her and Interim House appeared in *The
Detroit News.* She appealed to the YWCA's five-member griev-
ance appeal committee, which upheld her discharge. She filed a
wrongful discharge action against the YWCA in Wayne Circuit
Court. Approximately fourteen months after being discharged,
she received an anonymous letter containing anti-Semitic state-
ments directed at her. Believing that the letter was written by
someone involved in the decision to discharge her or the
decision to deny her appeal, she filed a second action against
the YWCA, claiming religious discrimination. The cases were
consolidated. The plaintiff and the defendant stipulated that
handwriting samples of six people, the executive director who
fired the plaintiff and the five members of the appeal board,
would be obtained and analyzed by a mutually acceptable
expert. The stipulation provided that if the expert did not give
a conclusive or definitive opinion that a particular person had
written the letter, then that person would be considered as not
having written the letter. The samples were taken and ana-
lyzed with no conclusive results. The expert reported that there
were fingerprints on the letter the plaintiff received and it was
conceivable that the fingerprints belonged to the letter's au-
thor. The plaintiff filed a motion asking the court to compel the
six individuals involved to provide fingerprint samples and
rolled ink impressions. The court, Charles S. Farmer, J., denied
the motion on the basis that the individuals were not parties to
the action and to compel them to submit to fingerprinting

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 11, 248, 448; Stipulations
§§ 7, 8, 17.

See the Index to Annotations under Discovery; Fingerprints; Stipu-
lations.

would be an unconstitutional invasion of privacy. The plaintiff appealed by leave granted.

The Court of Appeals *held:*

The taking and furnishing of fingerprints by a person who is not a party to an action does not violate the prohibitions against compulsory self-incrimination or unreasonable searches and seizures. There is no reasonable expectation of privacy in fingerprints, and the taking and furnishing of fingerprints does not represent an invasion of an individual's solitude or private affairs. The trial court correctly denied the plaintiff's motion, however, because the stipulation and order regarding the handwriting samples precludes the requested discovery. There is no reason to set aside the stipulation since there is no evidence that it was entered into as the result of inadvertence, improvidence, or excusable neglect.

Affirmed.

MARILYN KELLY, J., dissenting, stated that the trial court abused its discretion in denying the motion, because the court had the authrority to modify its earlier protective order to permit discovery if the discovery would further the ends of justice. She would remand for a hearing before the trial court to determine whether there was cause to amend the order and permit the discovery by the fingerprinting sought by the plaintiff.

1. EVIDENCE — DISCOVERY — APPEAL.

A trial court's decision to grant or deny discovery is subject to reversal only if there has been an abuse of discretion.

2. EVIDENCE — DISCOVERY.

A trial court when determining whether it should grant or deny a request for discovery should consider whether the granting or extension of discovery will facilitate rather than impede the litigation; factors such as the timeliness of the request, the duration of the litigation, and possible prejudice to the parties should also be considered.

3. EVIDENCE — FINGERPRINTS — NONPARTIES.

The taking and furnishing of fingerprints of a person who is not a party to an action does not violate the prohibitions against compulsory self-incrimination or unreasonable searches and seizures; there is no reasonable expectation of privacy in fingerprints, and the taking and furnishing of fingerprints does not represent an invasion of an individual's solitude or private affairs.

4. STIPULATIONS — BINDING EFFECT — SETTING ASIDE.

    A stipulation is given full force and effect and is binding upon the parties unless abandoned or disaffirmed; once received and approved, a stipulation is sacrosanct, and neither a judge nor a hearing officer may alter it; a stipulation may be set aside, however, where it has been entered into as the result of inadvertence, improvidence, or excusable neglect.

5. STIPULATIONS — JUDICIAL CONSTRUCTION.

    A stipulation is to be construed as a whole and in light of the facts and circumstances surrounding its making and may not be construed to effect the waiver of a right unless such an intent is plainly indicated.

6. STIPULATIONS — MANNER OF DISCOVERY — FACTS.

    Parties to a lawsuit may stipulate the manner in which discovery will be conducted and to the facts involved (MCR 2.302[F][2]).

*Barnhart & Mirer, P.C.* (by *Jeanne Mirer*), and *Neal Bush*, for the plaintiff.

*Riley & Roumell* (by *Daniel J. Bretz*), for the defendant.

Before: CYNAR, P.J., and BRENNAN and MARILYN KELLY, JJ.

BRENNAN, J. Plaintiff appeals by leave granted from the trial court's order denying her motion to compel fingerprint samples and rolled ink impressions. We affirm.

The issue presented on appeal is whether the trial court abused its discretion by denying plaintiff's motion to compel fingerprint samples and rolled ink impressions of nonparties. We answer in the negative.

Plaintiff is a former director of Interim House, a shelter for abused women, which is sponsored by defendant. Defendant discharged plaintiff on January 31, 1984, after a story about plaintiff and her work at Interim House appeared in *The Detroit News.* The article was accompanied by a picture

which, according to defendant, identified some of
the children of mothers then residing at Interim
House. Defendant discharged plaintiff for cause on
the basis that plaintiff, who had consented to the
article, breached program confidentiality rules by
allowing the picture to be taken and published.
Defendant prohibits the taking and publishing of
photographs of Interim House residents in order to
insure their privacy and safety.

On February 7, 1984, plaintiff appealed her
discharge to defendant's five-member grievance
appeal committee. Plaintiff argued that she was
discharged without cause because the *News* pho-
tographers had agreed not to take identifiable
pictures of any of the Interim House residents.
(The *News* confirmed this in writing to defendant.)
The appeal board denied plaintiff's claim. Plaintiff
then filed a wrongful discharge suit in Wayne
Circuit Court on May 23, 1984.

Approximately fourteen months after her dis-
charge, plaintiff received an anonymous letter con-
taining anti-Semitic statements. Plaintiff believes
that a person involved in either the decision to
discharge her or the decision to deny her appeal
wrote the letter. On October 13, 1986, plaintiff
moved to amend her complaint to add a claim of
religious discrimination. The trial court denied the
motion. On November 30, 1986, plaintiff filed a
second action, claiming religious discrimination.
The two cases were then consolidated.

Plaintiff sought handwriting samples from de-
fendant's executive director, who actually dis-
charged plaintiff, and the five members of the
panel that denied plaintiff's appeal. Plaintiff and
defendant stipulated to a procedure by which
handwriting samples of the six individuals would
be obtained and analyzed. The stipulation was
later embodied in the trial court's June 13, 1988,

protective order. The samples were to be analyzed by a mutually agreed upon expert. The stipulation and order also provide:

> The parties have agreed that if the expert does not give a conclusive or definitive opinion that a person actually wrote the letter, then that person shall be considered as having not written the letter.

The handwriting samples were taken on May 27, 1988. The handwriting expert reported back to plaintiff's counsel that he had discovered fingerprints on the letter sent to plaintiff. Because none of the six women who provided writing samples touched the letter since plaintiff received it, he concluded that if the fingerprints of one of them were on the letter, that person must be presumed to be the one who wrote the letter. Plaintiff then filed the motion which is the subject of this appeal. The trial court denied the motion on June 24, 1988. The trial court stated:

> Right now, you can take this on appeal. I do not think you are entitled to take fingerprints or blood samples of third parties or parties who are not part of a lawsuit. I am concerned about those parties who might be a part of the lawsuit—but go out and take fingerprints of other parties, no. I think it is an invasion of privacy and constitutionally impermissible.

On July 20, 1988, the handwriting expert submitted his report to the parties. The expert was unable to conclusively determine whether any of the individuals tested wrote the letter.

We granted plaintiff's application for leave to appeal on August 2, 1988.

Plaintiff argues that the taking of fingerprints of

defendant's agents is sanctioned under MCR 2.310. Plaintiff contends that fingerprints are "tangible things" within the contemplation of the court rule. Plaintiff also contends that the taking of fingerprint samples in this case does not infringe upon any constitutional rights. Thus, plaintiff argues, the trial court erred in denying the motion to compel.

A trial court's decision to grant or deny discovery is subject to reversal only if there has been an abuse of discretion. *McDonald Ford Sales, Inc v Ford Motor Co,* 165 Mich App 321, 329; 418 NW2d 716 (1987). The trial court should consider whether the granting of discovery will facilitate or hamper the litigation. Factors such as the timeliness of the request, the duration of the litigation and the possible prejudice to the parties should also be considered. *Id.* at 330.

We disagree with the trial court's conclusion that the taking and furnishing of fingerprints by a nonparty is unconstitutional. The taking and furnishing of fingerprints is not violative of the prohibition against compulsory self-incrimination. The prohibition protects only testimonial evidence; noncommunicative evidence, such as a fingerprint, is beyond its protection. *People v Davis,* 17 Mich App 615; 170 NW2d 274 (1969). Furthermore, the taking of fingerprints is not violative of the prohibition against unreasonable searches and seizures. There is no reasonable expectation of privacy in one's fingerprints. It is also plain to us that there is no general privacy interest which would preclude the taking and furnishing of fingerprints. The taking and furnishing of fingerprints does not represent an invasion of an individual's solitude or private affairs. See *Beaumont v Brown,* 401 Mich 80; 257 NW2d 522 (1977).

Nevertheless, we find that the trial court did not

abuse its discretion by denying plaintiff's motion to compel because the stipulation and order regarding the handwriting samples precludes the requested discovery.

Plaintiff stipulated that if the handwriting analysis failed to conclusively establish that an examinee actually wrote the letter, then that person would be considered as not having written the letter.

A stipulation is given full force and effect and is binding upon the parties unless abandoned or disaffirmed. *Dana Corp v Employment Security Comm,* 371 Mich 107, 110; 123 NW2d 277 (1963); *Kimball v Bangs,* 321 Mich 394; 32 NW2d 831 (1948). Once received and approved, stipulations are sacrosanct. Neither a judge nor a hearing officer may alter them. *Dana Corp, supra.*

A stipulation is to be construed as a whole and in light of the facts and circumstances surrounding its making. *Security Trust Co v Glazier,* 170 Mich 26; 135 NW 904 (1912). A stipulation may not be construed to effect the waiver of a right unless such an intent is plainly indicated. *Celina Mutual Ins Co v Citizens Ins Co,* 133 Mich App 655, 658; 349 NW2d 547 (1984).

Parties to a lawsuit may stipulate to the manner in which discovery will be conducted. MCR 2.302(F)(2). Furthermore, they may stipulate to facts. *Dana, supra.*

While we agree that a stipulation agreed to by the parties may be set aside where it has been entered into as a result of inadvertence, improvidence, or excusable neglect, *People v Patricia Williams,* 153 Mich App 582, 588-589; 396 NW2d 805 (1986), we do not believe that such factors exist here and, therefore, relief is not warranted.

The stipulation concerning the handwriting analysis was executed in May, 1988, approximately

three years after plaintiff received the letter. During that time, the letter never left plaintiff's possession or control. We cannot understand how plaintiff's failure to discover during that time the existence of fingerprints on the letter can be said to have been due to inadvertence, improvidence, or excusable neglect. We find it puzzling that plaintiff waited three years before having the letter examined by a document expert in order to attempt to determine authorship. The stipulation was not entered into under a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised. *Williams, supra* at 589.

We must emphasize that the women involved were not parties to the action. However, they agreed to handwriting analysis on the condition that, if not conclusively found to be the letter's author, they were free of suspicion. In our judgment the parties made a bargain and should be required to abide by it.

In view of the stipulation binding both parties, the trial court's ruling denying the motion to compel fingerprint samples was not an abuse of discretion.

Affirmed.

CYNAR, P.J., concurred.

MARILYN KELLY, J. *(dissenting)*. I respectfully dissent. A review of the chronology of events is helpful here.

The parties entered into a stipulation for obtaining findings from a handwriting expert on May 27, 1988. The expert, in examining the hate letter, found fingerprints on it and suggested to plaintiff's counsel that the prints might help in disclosing the author of the letter. By then the trial court

had memorialized the stipulation in its June 13, 1988, protective order.

Plaintiff's counsel took immediate action on the handwriting expert's idea and, presumably, sought concurrence from defense counsel, who refused. Plaintiff's counsel next filed a motion to compel the fingerprinting suggested by the handwriting expert. It was then one week after entry of the protective order. No results had been obtained pursuant to the stipulation with respect to analysis of the handwriting. It was not until July 20 that the handwriting report was submitted to the parties.

The trial court denied the June 24 motion in the belief that it lacked the discretion to compel nonparties to be fingerprinted for discovery purposes. At this point, I believe, the judge abused his discretion. First, as pointed out by the majority, the court was mistaken in concluding that the taking and furnishing of fingerprints by a nonparty is unconstitutional. Secondly, the court did have the discretion to modify its June 13 protective order to permit discovery if it would further the ends of justice.

The fact that the protective order was based on a stipulation of counsel was not an insuperable bar to amendment. Our Court recognized that principle in *People v Patricia Williams,* 153 Mich App 582, 588-589; 396 NW2d 805 (1986), when it quoted 73 Am Jur 2d, Stipulations, § 14, pp 550-551:

It is generally held that relief may be afforded from a stipulation which has been entered into as the result of inadvertence, improvidence, or excusable neglect, provided that the situation has not materially changed to the prejudice of the antagonist and that the one seeking relief has been reasonably diligent in doing so. It is also generally recognized that relief may be had from a stipula-

tion where there has been a change in conditions or unforeseen developments which would render its enforcement inequitable, provided there has been diligence in discovering the facts relative to the disputed matter, the application is timely, and the opposing party has not so changed his position as to be prejudiced to a greater extent than the applicant.

Some cases have expressed the view that relief from a stipulation may properly be granted whenever it appears that some inequity or disadvantage may result to one of the parties, provided the other will not be prejudiced thereby. And there is some authority suggesting that relief from stipulations executed as a result of a mistake of law should be granted as a matter of course, at least where such relief would not constitute an injustice to the opposing party. A stipulation entered into under a mistake as to a material fact concerning the ascertainment of which there has been reasonable diligence exercised is the proper subject for relief.

It appears to me that the discovery of fingerprints on the hate note after counsel stipulated to the handwriting analysis constituted an unforeseen development. That development rendered inequitable the enforcement of the stipulation allowing dismissal of any suspect who was not unquestionably found by the handwriting expert to have written the note. I believe plaintiff's counsel acted diligently after learning that fingerprints existed on the note. The defense would not have been prejudiced by a granting of the motion, since it had not changed its position nor relied on the stipulation to its detriment.

I would remand for a hearing before the trial court to determine whether there was cause to amend the order and permit the discovery by fingerprinting sought by plaintiff.