# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT NORTHERN INSURANCE CO. as
subrogee of the JANE E. VONVOIGTLANDER
IRREVOCABLE TRUST NO. 3, and ALLSTATE
PROPERTY AND CASUALTY COMPANY,

        Plaintiffs,

v

MECHANICAL CONTRACTING SERVICES,
LLC a/k/a BALLARD'S AND GREAT LAKES,
NOEL-RAND, INC. a/k/a BALLARD'S
PLUMBING, HEATING, AIR CONDITIONING,
REFRIGERATION AND ELECTRICAL, and
EMMET BRICK & BLOCK COMPANY,

        Defendants-Cross Defendants,
and

THOMAS SEBOLD & ASSOCIATES, INC.,

        Defendant/Cross Plaintiff/Cross
        Defendant-Appellant,
and

TC INSULATING, INC. and NJ WHITE
ASSOCIATES, PC,

        Defendants-Cross Plaintiffs,
and

BAIRD & SON PLASTERING, LLC, RUDY'S
DRYWALL, INC., SR DRYWALL, BOUMA
CORP, and TOWN & COUNTRY FIREPLACES,
LTD,

        Defendants,
and

JACQUELINE MOODY, ESTATE OF JANE E.

UNPUBLISHED
October 27, 2015

No. 321597
Emmet Circuit Court
LC No. 11-003133-NZ

-1-

VONVOIGTLANDER, JANE E.
VONVOIGTLANDER LIVING TRUST,
PRESERVE AT BAY HARBOR, L LC, JANE E.
VONVOIGTLANDER IRREVOCABLE TRUST,
and GWEN HAGGERTY-BEARDEN,

Appellees

ALLSTATE PROPERTY & CASUALTY, as
subrogee of CHERYL G. HAGGERTY,

Plaintiff,

v

MECHANICAL CONTRACTING SERVICES,
LLC a/k/a BALLARD'S AND GREAT LAKES,
NOEL-RAND, INC. a/k/a BALLARD'S
PLUMBING, HEATING, AIR CONDITIONING,
REFRIGERATION AND ELECTRICAL, TC
INSULATING, INC., EMMET BRICK & BLOCK
COMPANY,

Defendants-Cross Defendants,
and

THOMAS SEBOLD & ASSOCIATES,

Defendant/Cross Plaintiff-
Appellant,
and

JACQUELINE MOODY, ESTATE OF JANE E.
VONVOIGTLANDER, JANE E.
VONVOIGTLANDER LIVING TRUST,
PRESERVE AT BAY HARBOR, LLC, JANE E.
VONVOIGTLANDER IRREVOCABLE TRUST,
and GWEN HAGGERTY-BEARDEN,

Appellees.

No. 321788
Emmet Circuit Court
LC No. 11-003314-NZ

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

-2-

In this sanction case, appellant Thomas Sebold Associates, Inc. (Sebold) appeals as of right an order granting appellees' request to re-open the case and impose sanctions against its attorney. For the reasons stated below, we vacate the trial court order and remand for further proceedings.

## I. BACKGROUND FACTS

This was a subrogation action brought by two insurance companies after they paid claims following a fire that destroyed a multi-million dollar residence in July 2010. The insurance companies, as subrogees, brought this action against appellant and other contractors alleging negligence and breach of warranty in the construction of the home.

During discovery, Sebold sent a subpoena to Jacqueline Moody, who served as a wealth manager for the owners of the destroyed home,[1] seeking

1.     information regarding the ownership and transfer in ownership of the residence,

2.     the value of the residence,

3.     mortgage information and payments for the residence,

4.     ownership and transfer information regarding Preserve at Bay Harbor LLC,

5.     income and expenses of the living trust and the irrevocable trust,

6.     any agreements between the LLC and the irrevocable trust,

7.     information on Cheryl Gwen Haggerty's income and expenses,

8.     tax returns for Haggerty and the LLC,

9.     information on any other property owned by Haggerty, including mortgage documents,

10.     monthly statements "for any and all financial accounts" held by Haggerty,

---

[1] The home was built by Jane VonVoigtlander, but was owned originally by the Jane E. VonVoigtlander Living Trust, which then transferred the house to the Preserve at Bay Harbor LLC. Gwen Haggerty-Bearden, the daughter of Jane VonVoigtlander, at times resided at the home. Jacqueline Moody was the financial advisor to the Estate of Jane VonVoigtlander and Haggerty-Bearden. These individuals and entity were referred to as the "Affected Parties" in the trial court, as we will do in this opinion.

11. debt documents and personal financial statements of Haggerty, and income and expense records "for any entity owned in whole or in part by" Haggerty, the living trust, the irrevocable trust, or the LLC.

Sebold requested "any and all records" on these items "from January 1, 2001 to present" or from the inception of the entity to the present. The Affected Parties moved to quash the subpoena, arguing that it was overbroad. Before the motion was heard, Sebold and the Affected Parties discussed limiting the documents requested with the subpoena. Specifically, Sebold's attorney sent the following proposal to limit the category and time period of the requested documents:

Per your request, here is a list of the additional items we think are relevant: 1) Gwen Haggerty's yearly income and expenses and tax returns for 2007 to the time of the fire; 2) Preserve at Bay Harbor LLC's yearly income and expenses and tax returns for 2007 to the time of the fire; 3) any mortgage or loan records regarding the property; 4) any information regarding other real property owned by Cheryl Gwen Haggerty in the area of Bay Harbor; and 5) a statement of the corpus of the Jane VonVoiglander Irrevocable Trust No. 3. Regarding the documents that Moody has previously produced, TSA does not need Moody to reproduce them. TSA would simply ask that Moody confirm that she has turned over all of the requested documents. Hopefully, this will cut things down to a more reasonable level.

The Affected Parties' attorney responded to the proposal by agreeing to the categories but not to the time frame:

The Affected Parties final offer to resolve the discovery dispute without judicial intervention is as follows: *They are willing to produce the existing documents regarding the categories identified in your email for the twelve months preceding the July 2010 fire* following entry of a mutually agreeable protective order restricting use and dissemination, reimbursement for all out of pocket costs incurred pursuant to MCR 2.310(D)(5) including, but not limited to, any charges incurred from their accountants who will have to put together documents and information, and copying to be performed by a third party provider at TSA's cost.

If these terms are agreeable, I will draft and forward a proposed protective order. If they are not, the Affected Parties will proceed with their Motion December 17, 2012. [Emphasis added.]

Consequently, the parties agreed to limit the documents requested to five categories:

1. Haggerty's yearly income, expenses, and tax;

2. the LLC's yearly income, expenses, and tax returns;

3. mortgage and loan records regarding the residence;

4.      information regarding Haggerty's other real property in the Bay Harbor area; and

5.      a statement of the corpus of the irrevocable trust.

As reflected in the emails, however, Sebold and the Affected Parties could not agree on a time frame. Sebold wanted records going back three years prior to the fire, while the Affected Parties wanted to go back only one year.

At the motion hearing, the Affected Parties focused on what was originally requested with the subpoena, rather than as it was limited through counsel. Sebold indicated it had been originally seeking records back to 2001 because that was when the tract of real estate was purchased and Sebold wanted "to show the pattern of how much money was coming in and how much was used to handle this house." It noted, however, that the parties had substantially reduced what was being requested. Sebold admitted that it had no concrete evidence of arson, but argued that discovery was just starting and one witness to the fire had made a statement that raised a question as to the origin of the fire, and the Petoskey fire authorities listed the cause of the fire as "undetermined." Focusing only on the original document request, the court found that the subpoena was grossly overbroad in scope and nature because there was no plausible explanation for requests dating back to 2001 for a fire that occurred in 2010. Thus, the court granted the motion to quash as well as the Affected Parties' request for sanctions, citing MCR 2.114.

Subsequently, in September 2013, the parties to the underlying action stipulated to dismissal of the claims. As non-parties, the Affected Parties did not receive notice of this stipulation (though they utilized the same attorney as did some of the parties to the underlying action), and thus motioned the court to re-open the case. The court granted their request and ordered sanctions of $6,712.92 against Sebold's attorney.

II. ANALYSIS

A. JURISDICTION

In its brief on appeal Sebold challenges the original order granting sanctions, entered on December 28, 2012, as well as the April 14, 2014 order that re-opened the case and awarded appellees $6,712.92 in costs and attorney fees. The Affected Parties argue, however, that we do not have jurisdiction over an appeal from the December 28, 2012 order awarding sanctions, nor over the September 25, 2013 stipulated order of dismissal, because the claim of appeal was filed on May 2, 2014, which was not within 21 days of the September 25, 2013 order. See MCR 7.204(A)(1)(a). To the contrary, the April 14, 2014 order re-opening the case and imposing sanctions is a final order under MCR 7.202(6)(a)(iv) as a "postjudgment order awarding or denying attorney fees and costs under MCR 2.403, 2.405, 2.625 or other law or court rule." Additionally, although "[a]n appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right," MCR 7.203(A)(1), the April 14 order was the final order both as to the granting of sanctions and the awarding of the amount. See *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 165-167; 712 NW2d 731 (2005) (recognizing that an order granting sanctions is not a final order

appealable of right until the court includes the monetary award). Accordingly, we have jurisdiction to address whether the trial court abused its discretion in both its initial sanction decision and its award of fees.

## B. SANCTIONS

A trial court's decision to impose discovery sanctions is reviewed for an abuse of discretion. *Bass v Combs*, 238 Mich App 16, 26; 604 NW2d 727 (1999) overruled on other grounds by *Dimmitt & Owens Fin, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618, 628; 752 NW2d 37 (2008).[2] The trial court's award of attorney fees and costs is also reviewed for an abuse of discretion. *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

MCR 2.114 provides, in relevant part:

> **(D) Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(E) Sanctions for Violation.** If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

If a party files "a signed document that is not well grounded in fact and law [it] subjects the filer to sanctions pursuant to MCR 2.114(E)." *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008).

---

[2] "We overrule *Bass* to the extent that it held that venue was proper in the county where the negligent omissions of the defendant occurred rather than the county in which the original injury suffered by the plaintiff occurred." *Id*.

Although we are quite cognizant of the deferential standard of review that we must apply, we nevertheless conclude that the trial court abused its discretion in sanctioning Sebold's counsel for the document request that was served with the subpoena. It was undisputed at the time of the motion hearing that Sebold and the Affected Parties had agreed to substantially limit the type of documents Sebold was requesting, having limited them to five categories, less than half that was originally requested. Just as importantly, Sebold had revised the request to go back only three years prior to the fire, and although the Affected Parties did not agree to that part of Sebold's proposal—it was nonetheless clear that Sebold was not seeking documents dating back to 2001.

Despite these undisputed facts the trial court focused almost exclusively on the original request instead of the request as revised by the parties. These revisions are important because they both reveal the more limited nature of the request actually being made and the reasonableness of the requesting party's actions, which are important in evaluating whether the requests were sanctionable. Consequently, we hold that it was an abuse of discretion for the trial court to ignore what the parties had done since issuance of the subpoena in narrowing the accompanying document request. Although the original document request was the only document signed, a court should not ignore the parties efforts to reduce a discovery request, even when, as here, there is not complete agreement on the entire reductions.[3] See, e.g., *Nuriel v YWCA*, 186 Mich App 141, 147; 463 NW2d 206 (1990) (recognizing that the parties have the ability to control and limit discovery).

For these reasons, we vacate the trial court's order sanctioning Sebold's counsel, and remand for further proceedings. The trial court on remand is free to reconsider the issue of sanctions in light of the limitation agreed to by the parties as reflected in this opinion. Because we have vacated the sanctions order, we need not address the order awarding a monetary amount of sanctions.

Vacated and remanded. We do not retain jurisdiction.

No costs, neither party having prevailed in full. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro

---

[3] To the extent the trial court concluded that Sebold had no evidence of arson, we simply point out that there was some evidence upon which Sebold could rely in concluding that the cause of the fire was undetermined and was worthy of further discovery.